IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **DAVID M.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | Civil No. TMD 20-2336 |
| v. | * | |
| | * | |
| | * | |
| **KILOLO KIJAKAZI,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |
| ************ | | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND**

Plaintiff David M. seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Acting Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for Supplemental Security Income under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 14).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**.

**I**

**Background**

Following remand by the Appeals Council (R. at 221-26), Administrative Law Judge ("ALJ") Richard Furcolo held a supplemental hearing on September 5, 2019, in Washington, D.C., where Plaintiff and a vocational expert ("VE") testified. R. at 35-54. The ALJ thereafter found on September 26, 2019, that Plaintiff was not disabled since his amended alleged onset date of disability of April 19, 2017, and the application date of March 13, 2015. R. at 12-34. In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since April 19, 2017, and that his loss of visual acuity and mental impairment were severe impairments. R. at 17. He did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 17-19. In comparing the severity of Plaintiff's mental impairments to the listed impairments, the ALJ found that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace. R. at 19.

> The ALJ then found that Plaintiff had the residual functional capacity ("RFC")
>
> to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasionally climb stairs and balance; frequently stoop, kneel, crouch, and crawl; and should never climb ladders. [Plaintiff's] visual acuity and field of vision are limited to avoiding ordinary hazards in the workplace, e.g., boxes on floor, door ajar, etc., and he cannot perform work requiring adequate binocular vision (has monocular vision) or good depth perception; he should avoid even moderate exposure to hazards. Last, [Plaintiff] is able to perform simple, routine tasks and can occasionally interact appropriately with supervisors, coworkers, and the public.

R. at 19.  In light of this RFC and the VE's testimony, the ALJ found that Plaintiff could perform light work in the national economy, such as a packer, ticket taker, or laundry worker.[3]  R. at 24-25.  The ALJ also found that these jobs were only representative examples, as he found that Plaintiff's RFC "would not necessarily substantially erode the occupational base at all levels."  R. at 25 n.1.  The ALJ thus found that Plaintiff was not disabled since April 19, 2017, and March 13, 2015.  R. at 25.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on August 12, 2020, a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case then was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

3

region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 4-9, ECF No. 12-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 6. In particular, he contends that the ALJ "failed set forth a narrative discussion setting forth how the evidence supported *each conclusion*, citing specific medical facts and nonmedical evidence." *Id.* Plaintiff also asserts that the ALJ failed to include any limitation upon his abilities to concentrate, persist, or maintain pace in the RFC assessment, without explanation. *Id.* at 7-8 (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)). Plaintiff then maintains that, while the ALJ "accorded the majority of the opinion evidence of record modest, moderate, or variable persuasive weight, he failed to provide any explanation of what he actually meant by any of

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

those terms. Consequently, his analysis of the opinion evidence of record defies review." *Id.* at 8. Plaintiff finally argues that he is entitled to an award of benefits as of his 55th birthday. *Id.* at 3-4. For the reasons discussed below, the Court remands this case for further proceedings.

SSR 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio*, 780 F.3d at 636 (alteration in original) (footnote and citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not

determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.*

Plaintiff argues that the ALJ's RFC assessment failed to account for his mild limitation in concentrating, persisting, or maintaining pace. Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 12-1. However, "*Mascio* dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC." *Brooks v. Berryhill*, No. 3:15-CV-00440-RJC, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017). Even if *Mascio* applied to mild limitations in concentration, persistence, or pace, when "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (quoting *Winschel*, 631 F.3d at 1180). Plaintiff's argument regarding *Mascio* in light of his mild limitation in concentrating, persisting, or maintaining pace is thus without merit. Plaintiff's additional contention that the ALJ's

analysis of the opinion evidence defies review because the ALJ failed to define the weight given to that evidence is also unavailing. *See Shahim A. v. Saul*, Civil No. TMD 18-2219, 2020 WL 1331893, at *6 (D. Md. Mar. 23, 2020).

Last, Plaintiff argues that the ALJ failed to explain adequately his RFC assessment by failing "to set forth a narrative discussion setting forth how the evidence supported *each conclusion*." Pl.'s Mem. Supp. Mot. Summ. J. 6, 8, ECF No. 12-1. Defendant asserts, however, that the ALJ offered a directed narrative discussion and supported his conclusions with substantial evidence. Def.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 14-1. The ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." R. at 19. As noted above, every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing the evidence that supports it. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). Here, although the ALJ acknowledged 20 C.F.R. § 416.945 and SSR 96-8p (R. at 16-17), "the ALJ did not indicate that his RFC assessment was rooted in a function-by-function analysis of how [Plaintiff's] impairments impacted [his] ability to work." *Id.* Rather, the ALJ's RFC assessment was based on SSR 16-3p, which sets out the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and to determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *See id.* (citing SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017)). "Of course, a claimant's symptoms, and the extent to which the alleged severity of those symptoms is supported by the record, is relevant to the RFC evaluation." *Id.* (citing 20 C.F.R. § 416.945(a)(3)). "But an RFC assessment is a separate and

distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." *Id.*

"The ALJ's reliance on an incorrect regulatory framework led to an erroneous RFC assessment" that requires the Court to remand this case. *Id.* at 388. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ in this case, however, began with step three, noting at the outset of his RFC evaluation that Plaintiff had the RFC "to perform a full range of work at all exertional levels" except that his "visual acuity and field of vision are limited to avoiding ordinary hazards in the workplace" and "he cannot perform work requiring adequate binocular vision (has monocular vision) or good depth perception; he should avoid even moderate exposure to hazards" (R. at 19). *See Dowling*, 986 F.3d at 388. "Only then did the ALJ identify evidence and attempt to explain how that evidence logically supported his predetermined conclusion" (R. at 19-24). *Id.* The ALJ thus erred in stating Plaintiff's RFC first and then concluding that the limitations caused by his impairments were consistent with that RFC. *See Thomas*, 916 F.3d at 312; *Monroe*, 826 F.3d at 188. Although the Fourth Circuit has declined to impose a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis, "the lack of a rule *requiring* remand does not mean that remand is never the appropriate outcome when an ALJ fails to engage in a function-by-function analysis." *Dowling*, 986 F.3d at 388. The Court finds that remand is appropriate here because of the ALJ's failure to engage in a function-by-function analysis.

Moreover, the ALJ found that Plaintiff's "reported activities of daily living are not entirely consistent with his allegations of disability." R. at 21. Disability claimants, however, "should not be penalized for attempting to lead normal lives in the face of their limitations."

11

*Lewis v. Berryhill*, 858 F.3d 858, 868 n.3 (4th Cir. 2017) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *Siddiqui v. Colvin*, 95 F. Supp. 3d 833, 845 (D. Md. 2015) (quoting same). "A claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 101 (4th Cir. 2020). Thus, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). The ALJ noted:

> Despite [Plaintiff's] alleged difficulty functioning due to vision loss, he is able to prepare simple meals, can function well enough to walk independently in unknown places, shop in stores, use a can opener, microwave, lawn mower/tractor, weedwacker, rake, vacuum, and dishwasher as well as care for his dog and chickens, prepare simple meals, babysit his grandkids, and perform some household repairs and laundry. He stated he lives largely alone as the owner of the house he resides in is rarely there, further evidencing and corroborating [Plaintiff's] demonstrated ability to care for himself, the house, and the animals independently. Further, [Plaintiff] admitted he can use a computer if it is largely zoomed, and that he uses it to find philosophy videos on YouTube. He is further able to manage his food stamps. Overall, these activities reveal a significantly greater functional capacity than alleged.

R. at 21.

According to Plaintiff's function reports, however, he ate tuna and pork and beans from the can, cooked hot dogs from a microwave oven, and prepared sandwiches. R. at 463, 561. He shopped for groceries once a month for twenty minutes at a time. R. at 464, 545, 562. According to Plaintiff, he would mow his lawn for an hour, but someone had to watch him so he would not hit anything while he did so. R. at 463, 561. The ALJ here did not "explain how those activities showed that [Plaintiff] could sustain a full-time job" and could actually perform the tasks required by light work. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th

Cir. 2017); *see Arakas*, 983 F.3d at 100 (citing *Woods*, 888 F.3d at 694). The Court remands this case to afford the ALJ the opportunity to do so.[6]

In sum, the ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694 (alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *Lewis*, 858 F.3d at 868. Because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the Court remands this case for further proceedings. *Thomas*, 916 F.3d at 311 (citing *Woods*, 888 F.3d at 694).

V

**Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: September 13, 2021

/s/
Thomas M. DiGirolamo
United States Magistrate Judge

---

[6] The ALJ also found that Plaintiff's "treating sources noted his vision may improve with cataract removal surgery, but [he] has not engaged in this treatment." R. at 21. "[T]he possibility of improvement with surgery, combined with unreliable results, supports no further limitation." R. at 21. The Court points out, however, that "[a] claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (alteration in original) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)). Thus, "the ALJ was required to inquire into [Plaintiff's] inability to pay before relying on [his] noncompliance in the credibility finding." *Keller v. Berryhill*, 754 F. App'x 193, 200 (4th Cir. 2018) (Wynn, J., concurring) (per curiam).